## SHACKELFORD *et al. v.* COVINGTON *et al.*

1. A supplemental petition is not amendable by striking therefrom all matter indicating its supplementary character, and substituting in lieu thereof other matter, the effect of which would be' to dissever the original from the supplemental petition and convert the latter into a new and independent suit, solely against one who was not a party to the case when the supplemental petition was filed.
2. The supplemental petition, considered in connection with and as a part of the original petition, was demurrable on the ground of estoppel.

Argued December 2, 1907.—Decided July 16, 1908.

Equitable petition. Before Judge Hammond. Richmond superior court. August 1, 1907.

In 1902 Sterling E. Shackelford and three other children of William E. Shackelford, deceased, filed an equitable petition against Ann E. Wilkinson, formerly the widow of George W. Shackelford Sr., George W. Shackelford Jr., as trustee and individually, Mattie S. Ludekins, these last two being children of the said George W. Sr. and Ann E., and against certain other named defendants. The allegations of the petition, so far as material here, were substantially, as follows: In 1867 George W. Shackelford Sr. conveyed 250 acres of land in trust for the sole use of his wife, Ann E., and his children by her, during his and her joint lives, remainder on the death of either to the sole use of the survivor for life, remainder on the death of the survivor to their children or issue thereof, and if such children should die, issue extinct, before such survivor, then to such survivor in fee. In 1885, the grantor having died, leaving surviving him Ann E. and three children by her, William E., George W., and Mattie S., Ann E., under power in the deed, appointed her son, William E. as trustee. In 1885 Ann E., William E.; and Mattie S. converted $2,700 of insurance money belonging to the estate to their own use. In 1888 William E., as trustee, sold 60 acres of the trust land for $1,500, and reported to the court that he had invested the proceeds of the sale in a loan to Ann E., on her note secured by her mortgage to him as trustee on 60 acres

of her own land, known as the Shopp tract, which alleged reinvestment the court approved; but in reality William E., Ann E., George W., and Mattie S. converted the $1,500 to their own use. In 1893 the same parties converted to their own use $372 belonging to the trust estate. In 1894, William E. having died, Ann E. appointed George W. as trustee, the corpus of the estate then consisting of what remained of the original trust land, 15 other acres conveyed by Ann E. to William E. as trustee, and the $2,700 of insurance money. On June 10, 1905, George W., as trustee, entered on the record of the above-mentioned mortgage a cancellation thereof, and on the same day Ann E. conveyed the mortgaged land, the Shopp tract, to George W., individually, and on March 10, 1896, he conveyed it to D. A. Covington, the purpose of the cancellation and of Ann E.'s conveyance to George W. being to divest the mortgage lien and dispose of the land for the personal benefit of George W. and Ann E. Covington, or those claiming under George W., held title to the Shopp tract when the petition was filed, the petition alleging that the trustee, George W., "has wholly aliened and disposed of, to his own personal ends, by collusion with said Ann E. [and] Mattie S. . . , said mortgage on said Shopp tract, to the injury of your petitioners' interests in the premises."

By amendment it was alleged: Ann E., by collusion between George W. and herself, conveyed the Shopp tract to him for a stated consideration of love and affection, and he thereafter sold and conveyed such tract to Covington for $850, which George W. and Ann E. divided among themselves and Mattie S., and they converted the money to their own use. "By conveyances from said Covington and his grantees said Shopp place has passed into the hands of other parties, and plaintiffs are advised and believe it would be extremely difficult, if not indeed impossible, to fix said parties with notice of the breaches of trust hereinbefore referred to, or to assert the lien of said mortgage against said Shopp place. And plaintiffs are further informed and believe that even if said land could be subjected to said mortgage, the value thereof is wholly inadequate to satisfy the same; and so plaintiffs say that by reason of the wrongful acts aforesaid Ann E., George W. and Mattie S., said sum of $1,500 has been lost to said trust estate." William E. Shackelford died intestate, without property, and there

is no administration upon his estate and no necessity for any. George W., Ann E., and Mattie S. are insolvent. "The said Ann E., by her wrongful acts aforesaid, has forfeited her life-interest under said trust deed of January 1, 1867, and any ultimate and contingent remainder interest said Ann E. may have under said trust deed should be divested out of her so far as the same may go for the diminution and waste of the corpus of said trust estate occasioned by her said wrongful acts." George W. and Mattie S., by their said wrongful acts, have wasted, dissipated, and destroyed more than two thirds of the corpus of the trust estate, and in justice and equity should be barred of any participation in or share of what now remains of said corpus.

The prayers of the petition, so far as material here, were: for the removal of the trustee; for the appointment of a receiver for the trust estate; for an accounting by Ann E., Mattie S., and George W., individually and as trustee, with plaintiffs, and for a decree against their interests, as well as generally against them, for such sum as it should be found they were due the plaintiffs; for the forfeiture of the life-estate of Ann E.; that it be decreed that she, George W., and Mattie S. have no further interest in or title to the property of the trust estate, and that plaintiffs be decreed to be the owners in fee of a one-third part of all the corpus of the trust estate as the same stood prior to the alleged acts of collusion and misapplication of the trust property by the defendants.

At the January term, 1905, there was a decree that the three defendants just named had committed the wrongful acts charged against them, and that George W. was insolvent. At the same term a decree was rendered, reciting that it is now decreed, "so far. only as, in the judgment of the court, is proper and necessary to fit the cause for further and final decree," that the trustee be removed, and that Benjamin H. Smith Jr. be appointed receiver to take charge of and hold, subject to the order of court, certain described lands. On June 10, 1905, during the April term, another decree was entered up, which began with the recital, "This cause coming on upon due notice to be further and finally decreed on." It was then decreed: (1) That by the acts alleged and found against her, Ann E. Wilkinson forfeited her life-estate under the trust deed executed in 1867, and that such life-estate is at an end. (2) By the acts found against them, George W. Shackelford and Mat-

tie S. Ludekins misapplied and incumbered the corpus of the trust estate to an extent greater than their interests as remaindermen, and, being insolvent, have no right, title, or interest in or to so much of the corpus as now remains. (3) The trust under the deed of 1867 is fully executed, and Ann E., George W., and Mattie S., respectively, have no right, title, or interest in or to so much of said corpus as now remains, but the same is the sole property, in fee, of the plaintiffs. (4) The value of said corpus, as it now should be, is $8,897, and plaintiffs are entitled to the immediate possession, in fee, of one third thereof, viz., $2,965.67. (5) The receiver is ordered to pay from the funds in his hands stated amounts as costs, fees, etc. (6) That the receiver pay the residue of the fund to plaintiffs' attorney, and (7) "That, as to the deficiency between the amount of said residue and the amount whereunto plaintiffs are decreed, in paragraph 4 of this decree, to be entitled, plaintiffs have leave to move at the foot of this decree for any appropriate relief as they may be advised, looking only to any assets of said corpus hereafter discoverable, if any, without personal liability to present defendants." It was ordered, at the same term, that should any of the defendants except to the decree, the receiver should pay the costs of taking the case to the Supreme Court. At the July term an order was granted, reciting that as certain of the defendants, who had excepted to the decree, had withdrawn their exceptions, in pursuance of a compromise between them and the plaintiffs, the receiver was directed to pay certain sums, as agreed on, to defendants' attorneys and other sums as costs, and that the residue be paid by the receiver to plaintiffs' attorney, in accordance with the decree of June 10, 1905. D. A. Covington was not a party to this case.

In March, 1906, the plaintiffs filed a petition, headed with the names of the same parties, as plaintiffs and defendants, the same case number, term of the court, etc., as in the original petition filed in 1902, and beginning, "And now come plaintiffs in the above-stated cause, and, pursuant to leave given them by paragraph 6 of the decree of June 10th, 1905, in said cause to move further relief at the foot of said decree, respectfully show to the court." In this petition substantially all of the allegations made in the petition filed in 1902 were set forth, except that no reference was made to certain conveyances of the land, which had been sold by

the receiver. It was further alleged that the mortgage given by Ann E. Wilkinson to William E. Shackelford, as trustee, was cancelled of record by George W. Shackelford, as trustee, in the following words: "The money for which this mortgage was given to secure having been divided among the beneficiaries by W. E. Shackelford, former trustee, the said mortgage is hereby cancelled and fully satisfied. Witness my hand and seal June 10, 1905. G. W. Shackelford, Trustee. (L. S.)" This was witnessed by a notary public.

It was further alleged: D. A. Covington, to whom George W. Shackelford conveyed the Shopp tract, had not only full notice, on the face of the record, of the breach of trust involved in the cancellation of the mortgage, at the time he took title to the Shopp tract, but was in fact party thereto, having confederated with George W. and Ann E. to defraud the trust estate of the mortgage, in this way, that Covington was then seeking to extradite George W., on requisition, out of Georgia into North Carolina, to there answer to a felony charged against him by Covington; and an agreement was entered into by George W., Ann E., and Covington, whereby George W. was to enter a satisfaction and cancellation of the mortgage, and Ann E. was then to convey the Shopp tract, the mortgaged land, to him individually, and he was then to convey it to Covington, who was to withdraw the prosecution and compound the felony; that such agreement was carried out, and that by reason of such fraud Covington had no valid title to the Shopp tract as against the lien of the mortgage so cancelled. The 10th paragraph of this petition was as follows: "That under the third paragraph of the decree . . of June 10, 1905, in this cause, said decree being final and conclusive, plaintiffs are the sole owners in fee of said mortgage of May 29, 1888, and entitled to foreclose the same and to foreclose it in equity in this proceeding." It was alleged that Covington had died intestate, leaving a widow and several minor children as his heirs at law; that there had been no administration upon his estate in Georgia, and that plaintiffs did not know the names of the widow and children. The prayers were, that they be served by publication, and that the mortgage be foreclosed in behalf of the plaintiffs.

On June 25, within the time granted them to answer, Mary A. Covington, widow of D. A. Covington, and her six children, de-

scribing themselves as "heirs at law of D. A. Covington, deceased, and defendants in the above-stated supplemental bill," filed a motion to dismiss this supplemental petition, on the following grounds: "1. Because the petition in said case fails to set out any cause of action. 2. Because it appears from the record in said case that plaintiffs have no right of action, for they are wholly estopped by the decree of the court already rendered therein." Plaintiffs moved to strike the second ground of this motion to dismiss, because it was a speaking demurrer and presented matter which, if good at all, was appropriate only to plea, and because it failed to disclose what constituted the alleged estoppel. Before either the motion to dismiss the petition or the motion to strike the second ground of the motion to dismiss was heard, plaintiffs moved to amend their petition, by striking therefrom the heading or statement as to parties, term of court, etc., and all recitals and allegations—stating them in the motion to amend—which showed the petition to be supplementary, and to insert, in lieu thereof, a new statement of the case and other allegations which would convert the petition into a separate and independent proceeding. The court refused to allow the amendment, overruled the motion to strike the second ground of defendants' motion to dismiss the petition, and dismissed the petition on defendants' motion; to all of which rulings the plaintiffs excepted.

*Salem Dutcher,* for plaintiffs.

*William H. Fleming,* for defendants.

FISH, C. J. (After stating the foregoing facts.)

1. The first point for adjudication is, whether the court erred in refusing to permit the plaintiffs to amend their supplemental petition, by striking therefrom all matter making it supplementary and substituting in lieu thereof matter which, if the amendment had been allowed, would have dissevered the original petition from the supplemental petition and converted the latter into an independent petition against the new defendants alone, thereby making an entirely new case. A supplemental petition, when properly before the court, is a mere addition to, or continuance of, the original petition, the whole constituting an amended petition. 16 Cyc. 359. No supplemental petition need be filed under our practice, as all matters formerly proper for such a petition shall be allowed by way of amendment. Civil Code, §4969. A supplemental petition

may, therefore, properly be treated as an amendment to the original petition. Our rule in regard to amendments is quite liberal, as all parties may, at any stage of the cause, as matter of right, amend their pleadings, both in matter of form and substance, provided there is enough to amend by (Ib. § 5097), with the further restriction against the addition of a new and distinct cause of action, or new and distinct parties, unless expressly provided for by law (Ib. § 5099); though the making of new parties in equity is always allowable in a proper cause.

Notwithstanding the liberality of the law as to the right to amend, we feel confident that the court correctly ruled that the supplemental petition in the present case was not amendable in the manner proposed. To decide otherwise would be tantamount to holding that where a petition is amended by setting up new matter against one not a party to the original case, the amendment itself may be amended, after such person has become a party defendant, by striking therefrom all allegations going to make it an amendment and substituting in lieu thereof other allegations, the effect of which would be to sever all ties between the original petition and the amendment thereto and to convert the amendment into a new suit against a new party alone. Such a proceeding, if allowed, would, in our opinion, be extending the right of amendment beyond the scope of even our broad and liberal rule on the subject.

2. The supplemental petition, when considered in connection with and as a part of the original petition, was evidently open to the attack made on it by the second ground of the motion to dismiss the same. Plaintiffs alleged substantially, in their original petition as amended, that three of the defendants named therein, one of whom was the trustee, and all having, as had plaintiffs, an interest in the trust estate, wrongfully converted to their own use certain sums of money belonging to such estate, among which was $1,500 which had been loaned by the former trustee to one of the defendants, secured by a mortgage, which had been subsequently cancelled by the trustee defendant, and the mortgaged premises conveyed by the mortgagor to him as an individual, and afterwards conveyed by him to Covington, who plaintiffs could not show was not an innocent purchaser; that such three defendants were insolvent, and that plaintiffs, who claimed to be the owners of all that

remained of the trust property, by reason of such wrongful acts of the defendants in appropriating more of the trust estate than they were entitled to, had lost said sum of $1,500. A verdict having been rendered finding that these three defendants had committed the wrongful acts charged against them, it was accordingly decreed that they had no further right to or interest in what remained of the trust estate, and that plaintiffs were the sole owners in fee thereof. A receiver for the trust estate was appointed, after verdict, who, in the decree, was directed to take charge of specified property of the estate, but the note for $1,500 and the mortgage given to secure its payment were not mentioned in the decree as being part of the estate, nor was the cancellation of the cancellation of the mortgage, or the cancellation of the deed from the mortgagor to one of the defendants to the mortgaged premises, decreed, although there was a prayer that both be cancelled. The decree recited that it was final, although it gave plaintiffs leave to move for any appropriate relief, "looking only to any assets of said corpus hereafter discoverable, if any, without personal liability to present defendants." As the plaintiffs had been compensated, in part at least, for their loss of the $1,500 which this mortgage was given to secure, by having it decreed that three of the defendants had no further interest in the trust estate, by reason of having wrongfully appropriated to their own use that sum, as well as other funds, belonging to the trust estate, and that plaintiffs were the sole owners in fee of the remaining corpus of such estate, the plaintiffs were estopped from proceeding by this supplemental petition to foreclose the mortgage against the heirs at law of Covington, who had purchased the mortgaged land, especially as the mortgage was not referred to in the decree as being an asset of the estate, and was not a subsequently discovered asset.

*Judgment affirmed. All the Justices concur.*